[Cite as *In re T.B.*, 2014-Ohio-5589.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re T.B., et al.                              Court of Appeals No.  L-14-1122

                                                Trial Court No.  JC 13231629

                                                **DECISION AND JUDGMENT**

                                                Decided:     December 19, 2014

* * * * *

Laurel A. Kendall, for appellant.

Jill E. Wolff, for appellee.

* * * * *

**YARBROUGH, P.J.**

## I.  Introduction

**{¶ 1}** Appellant, L.C., appeals the judgment of the Lucas County Court of
Common Pleas, Juvenile Division, terminating her parental rights and awarding
permanent custody of her children, Tama.B., Timma.B., Tati.B., Timmy.B., Tari.B., and

Tamr.B., to appellee, Lucas County Children Services (LCCS). For the following

reasons, we affirm.

## A. Facts and Procedural Background

{¶ 2} On March 29, 2013, LCCS filed a complaint in the juvenile court alleging

dependency, neglect, and abuse, and moving the court for a shelter care hearing. The

complaint stemmed from a referral LCCS received two days earlier stating that there was

no food in the family home. After receiving the referral, LCCS began an investigation

that revealed that the oldest three children were being sexually abused by their father,

T.B.[1] The children reported the abuse to appellant, but she failed to take action, believing

that the children had fabricated the story at the urging of appellant's sister, who did not

get along with T.B. Notwithstanding the reports of sexual abuse, appellant continued to

allow T.B. to spend time alone with the children. In addition to the discovery of sexual

abuse, LCCS found that appellant's house was "trashed with garbage, dirty diapers, old

food, and had a strong odor." Moreover, it was alleged that the children were without

clothing and that their hygienic needs were not being met.

{¶ 3} On the same day the complaint was filed, a shelter care hearing was held,

after which LCCS was awarded interim, temporary custody. A case plan was filed on

April 19, 2013, with the goal of reunification. The case plan required appellant to obtain

stable housing, complete a mental health assessment, participate in a non-offending

parenting course, and attend an interactive parenting program. Further, LCCS required

---

[1] T.B. appeared on the first day of trial and waived his right to remain a party to the action. Thus, T.B. is not a party to this appeal.

2.

appellant to undergo a psychological evaluation. Ultimately, the children were adjudicated dependent, neglected, and abused on May 9, 2013. Consequently, LCCS was awarded temporary custody of the children.

{¶ 4} Three months later, on August 5, 2013, an amended case plan was filed, changing the permanency goal from reunification to permanent custody. A motion for permanent custody was subsequently filed on August 14, 2013. LCCS amended the case plan as a result of appellant's failure to comply with the terms of her original case plan. Specifically, appellant failed to secure stable housing. Further, appellant failed to receive a psychological evaluation, largely due to her refusal to consent to the release of her personal information. Her refusal was based in part on a mistrust of LCCS stemming from an incident in which an agency worker, without appellant's knowledge, placed appellant's initials on a release form that appellant had already signed.

{¶ 5} A hearing on LCCS's motion for permanent custody was held on November 25, 2013, February 27, May 5, and May 9, 2014. At the hearing, LCCS called three witnesses in support of its motion; Sasha Dacres, Holly Mangus, and Dr. Randall Schlievert. Appellant also testified, and called one witness of her own, Wendy Nathan. Finally, the children's guardian ad litem, Robin Fuller, also testified.

{¶ 6} At the conclusion of the hearing, the juvenile court granted LCCS's motion for permanent custody, finding that the children could not and should not be placed with appellant within a reasonable period of time under R.C. 2151.353(A)(4) and R.C.

3.

2151.414(E)(1), (4), and (15), and that permanent custody to LCCS was in the children's best interests under R.C. 2151.414(D). Subsequently, appellant filed her timely notice of appeal.

{¶ 7} Based upon the belief that no prejudicial error occurred below, appellant's appointed counsel has filed a motion to withdraw and a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

{¶ 8} *Anders* and *State v. Duncan*, 57 Ohio App.2d 93, 385 N.E.2d 323 (8th Dist.1978), set forth the procedure to be followed by appointed counsel who desires to withdraw for want of a meritorious, appealable issue. In *Anders*, the United States Supreme Court held that if counsel, after a conscientious examination of the case, determines it to be wholly frivolous, counsel should so advise the court and request permission to withdraw. *Anders* at 744. This request, however, must be accompanied by a brief identifying anything in the record that could arguably support the appeal. *Id.*

{¶ 9} Counsel must also furnish the client with a copy of the brief and request to withdraw and allow the client sufficient time to raise additional matters. *Id.* Once these requirements have been satisfied, the appellate court must then conduct a full examination of the proceedings held below to determine if the appeal is indeed frivolous. If the appellate court determines that the appeal is frivolous, it may grant counsel's request to withdraw and dismiss the appeal without violating constitutional requirements, or it may proceed to a decision on the merits if state law so requires. *Id.*

## B. Assignments of Error

4.

{¶ 10} In her *Anders* brief, appellant's counsel assigns the following potential errors for our review:

Potential Assignment of Error 1: The trial court erred in finding that Lucas County Children Services proved by clear and convincing evidence that mother failed continuously and repeatedly to substantially remedy the conditions causing the children to be placed outside the children's home. R.C. 2151.414(E)(1).

Potential Assignment of Error 2: The trial court erred in finding that Lucas County Children [Services] proved by clear and convincing evidence that mother committed abuse or allowed the children to suffer neglect, and that the seriousness, nature, or likelihood of recurrence of the abuse or neglect makes the children's placement with the mother a threat to the children's safety. R.C. 2151.414(E)(15).

Potential Assignment of Error 3: The trial court erred in finding that Lucas County Children [Services] proved by clear and convincing evidence that mother allowed the father to have access to the children after they disclosed sexual abuse to her by him, thus exacerbating the abuse they had suffered, and creating additional emotional damage. R.C. 2151.414(E)(16).

{¶ 11} Additionally, appellant has filed her own brief, raising the following assignments of error:

I. The trial court committed plain and reversible error by awarding custody to LCCS when it had failed to comply with R.C. 2151.419(B)(1).

II. The trial court erred in finding that LCCS proved by clear and convincing evidence that mother failed continuously and repeatedly to remedy the conditions causing the children to be placed outside the children's home [pursuant] to R.C. 2151.414(E)(1).

III. The trial court erred in finding by clear and convincing evidence that it was in the best interest of the children that LCCS be granted permanent custody when it failed to properly apply all five relevant factors [under] R.C. 2151.414(D).

{¶ 12} For ease of discussion, we will address the proposed assignments of error out of order.

## II. Analysis

{¶ 13} In *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), the United States Supreme Court noted that parents' interest in the care, custody, and control of their children "is perhaps the oldest of the fundamental liberty interests recognized by this Court." The protection of the family unit has always been a vital concern of the courts. *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972).

{¶ 14} Ohio courts have long held that "parents who are 'suitable' persons have a 'paramount' right to the custody of their minor children." *In re Perales*, 52 Ohio St.2d

6.

89, 97, 369 N.E.2d 1047 (1977). Therefore, parents "must be afforded every procedural and substantive protection the law allows." *In re Smith*, 77 Ohio App.3d 1, 16, 601 N.E.2d 45 (6th Dist.1991).

{¶ 15} Thus, a finding of inadequate parental care, supported by clear and convincing evidence, is a necessary predicate to terminating parental rights. "Before any court may consider whether a child's best interests may be served by permanent removal from his or her family, there must be first a demonstration that the parents are 'unfit.'" *In re Stacey S.*, 136 Ohio App.3d 503, 516, 737 N.E.2d 92 (6th Dist.1999), citing *Quillon v. Walcott*, 434 U.S. 246, 255, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978). Parental unfitness is demonstrated by evidence sufficient to support findings pursuant to R.C. 2151.414. *See In re William S.*, 75 Ohio St.3d 95, 661 N.E.2d 738 (1996), syllabus.

{¶ 16} In order to terminate parental rights and award permanent custody of a child to a public services agency under R.C. 2151.353(A)(4), the juvenile court must find, by clear and convincing evidence, two things: (1) that the children cannot be placed with one of their parents within a reasonable time or should not be placed with their parents under R.C. 2151.414(E), and (2) that permanent custody is in the best interests of the child under R.C. 2151.414(D)(1). Clear and convincing evidence is that which is sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. It is more than a preponderance of the evidence, but does not require proof beyond a reasonable doubt. *Id.*

7.

{¶ 17} "A trial court's determination in a permanent custody case will not be reversed on appeal unless it is against the manifest weight of the evidence." *In re A.H.*, 6th Dist. No. L-11-1057, 2011-Ohio-4857, ¶ 11, citing *In re Andy-Jones*, 10th Dist. Nos. 03AP-1167, 03AP-1231, 2004-Ohio-3312, ¶ 28. In conducting a review on manifest weight, the reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 17. We recognize that, as the trier of fact, the trial court is in the best position to weigh the evidence and evaluate the testimony. *In re Brown*, 98 Ohio App.3d 337, 342, 648 N.E.2d 576 (3d Dist.1994). Thus, "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts." *Eastley* at ¶ 21, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, fn. 3, 461 N.E.2d 1273 (1984).

### A. Reasonable Efforts Determination

{¶ 18} In appellant's first assignment of error, she argues that the juvenile court failed to comply with R.C. 2151.419(B)(1) prior to granting LCCS's motion for permanent custody.

{¶ 19} R.C. 2151.419(B)(1) provides:

8.

(B)(1) A court that is required to make a determination as described in division (A)(1) or (2) of this section shall issue written findings of fact setting forth the reasons supporting its determination. If the court makes a written determination under division (A)(1) of this section, it shall briefly describe in the findings of fact the relevant services provided by the agency to the family of the child and why those services did not prevent the removal of the child from the child's home or enable the child to return safely home.

{¶ 20} Here, appellant contends that the court failed to include findings of fact in its decision outlining the services provided by LCCS and why the services were unsuccessful in preventing removal of the children from the home. We disagree.

{¶ 21} In its decision, the juvenile court pointed out that case plan services were offered to appellant beginning in March 2013. The court went on to indicate that those services included "mental health assessments and treatment, psychological assessment, non-offenders parenting services, case management services, and visitation." Later in its decision, the court explained that appellant "has not been cooperative with services." In support of its conclusion, the court cited appellant's refusal to address the issues that led to the removal of her children. The court noted appellant's failure to complete a psychological evaluation as directed, along with her refusal to sign a release form so that LCCS could communicate with her mental health providers.

9.

{¶ 22} Having reviewed the juvenile court's decision and the record in its entirety, we find no merit to appellant's assertion that the court failed to comply with the requirements of R.C. 2151.419(B)(1). Consequently, appellant's first assignment of error is not well-taken.

## B. Juvenile Court's Application of R.C. 2151.414(E)

{¶ 23} In appellate counsel's first potential assignment of error, she argues that the trial court erred in finding, under R.C. 2151.414(E)(1), that appellant failed to remedy the conditions causing the children to be placed outside the children's home. Likewise, appellant raises the same argument in her second assignment of error. Further, in appellate counsel's second and third potential assignments of error, she contends that the trial court erred in finding mother committed abuse or allowed the children to suffer neglect, and that the seriousness, nature, or likelihood of recurrence of the abuse or neglect makes the children's placement with the mother a threat to the children's safety under R.C. 2151.414(E)(15). Because each of these assignments of error challenge the juvenile court's findings under R.C. 2151.414(E) and its concomitant determination that the children cannot be placed with appellant within a reasonable time or should not be placed with appellant, we will address the assignments of error simultaneously.

{¶ 24} Here, the juvenile court found that the children could not and should not be placed with appellant within a reasonable period of time under R.C. 2151.414(E). Specifically, the court found that R.C. 2151.414(E)(1), (4), and (15) applied with respect to appellant.

10.

**{¶ 25}** R.C. 2151.414(E) provides, in relevant part:

In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

* * *

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

* * *

(15) The parent has committed abuse as described in section 2151.031 of the Revised Code against the child or caused or allowed the child to suffer neglect as described in section 2151.03 of the Revised Code, and the court determines that the seriousness, nature, or likelihood of recurrence of the abuse or neglect makes the child's placement with the child's parent a threat to the child's safety.

{¶ 26} Appellant, and her appointed counsel, assert that the juvenile court erred in finding that she failed to remedy the conditions causing the children to be placed outside the children's home under R.C. 2151.414(E)(1). Moreover, counsel contends that the juvenile court erroneously found that appellant committed abuse or allowed the children to suffer neglect under R.C. 2151.414(E)(15).

{¶ 27} At the outset, we note that R.C. 2151.414(E) directs a juvenile court to enter a finding that the children cannot be placed with either parent within a reasonable time or should not be placed with either parent when *any* of the enumerated factors are found to be applicable. Thus, even if the juvenile court erred in concluding that R.C.

12.

2151.414(E)(1) and (15) was applicable, its findings under R.C. 2151.414(E)(4) are sufficient to support its conclusion that the children could not be placed with appellant within a reasonable time or should not be placed with appellant. Nonetheless, we find that the juvenile court's findings under R.C. 2151.414(E)(1) and (15) were not against the manifest weight of the evidence.

{¶ 28} Concerning the juvenile court's finding under R.C. 2151.414(E)(1), the record contains ample evidence to demonstrate that appellant failed to remedy the conditions causing the children to be placed outside the children's home. As stated by the juvenile court, the children were removed "due to concerns for poor supervision, parenting concerns, mental health concerns for [appellant], and sexual and physical abuse of the children."

{¶ 29} At the hearing on the motion for permanent custody, LCCS caseworker, Sasha Dacres, testified that LCCS developed a case plan for appellant, which included a parenting program, a mental health assessment, domestic violence services, and a psychological evaluation. Further, appellant was expected to secure suitable housing. Dacres noted that appellant completed the parenting program and engaged in mental health services through Harbor Behavior Health. However, appellant was unable to secure independent housing suitable for herself and her six children. Currently, appellant resides in a single-family home with her sister and her sister's two children. Moreover, according to Dacres, appellant exhibited "a lot of resistance" concerning the psychological evaluation. Specifically, appellant visited Harbor, but the agency was

13.

unable to obtain any information from Harbor because appellant revoked her consent for the release of such information. Subsequently, appellant refused to sign a release for several months after visiting Harbor. Ultimately, appellant failed to schedule an appointment with Harbor to have her psychological evaluation completed. Once LCCS was able to communicate with Harbor, it was discovered that appellant's treatment plan did not adequately address the issues concerning the children, namely the sexual abuse that had occurred. Upon further questioning, Dacres stated that appellant had not completed the psychological evaluation as of the date of the hearing. She also indicated that appellant was persistent in her refusal to acknowledge the sexual abuse that had occurred in the home.

{¶ 30} With regard to the issue of appellant's poor supervision of the children, Dacres testified that she observed appellant's supervised visits with the children during the pendency of this case. Based on her observations, Dacres stated that appellant had little to no interaction with the children. Dacres also noted appellant's requests to reschedule or shorten several of the visits to accommodate her school schedule.

{¶ 31} Dacres's testimony was echoed by the LCCS supervisor assigned to this case, Holly Mangus, who stated that appellant refused to accept that the children had been abused, instead blaming her sister for "[putting] thoughts into the mind of the children." Despite the physical evidence supporting the sexual abuse allegations, appellant continued to deny that the children were sexually abused. Mangus also testified that appellant's cooperation with LCCS throughout this process has been "very poor."

14.

Mangus based her assessment of appellant's cooperation on appellant's revocation of consent for the agency to communicate with health professionals and her persistent refusal to subsequently sign such releases despite her attorney's permission to do so. Concerning appellant's supervision of the children, Mangus testified that appellant was "parenting from the couch," meaning she failed to engage the children or interact with them.

{¶ 32} Finally, the children's guardian ad litem, Robin Fuller, also testified at the hearing. When asked to describe her observations of appellant's supervised visits with the children, Fuller stated:

It's very chaotic. The kids all want her attention. Usually she has the baby on her lap. She's kind of oblivious to the other kids. * * * During the visits she really isn't focused on the kids. She looks frustrated, overwhelmed. She doesn't watch what they're doing. At one point myself and another parent that was in the room had to redirect [one of the children] because she was trying to plug stuff into a socket that had been covered. And she was trying to take the cover off, and I told [appellant] twice that was happening, but she doesn't respond. She just kind of sits there. * * * But she really doesn't engage with the kids. She's just kind of there physically but not mentally.

{¶ 33} In light of the foregoing testimony presented at the hearing, we cannot say that the juvenile court's conclusion that appellant failed to remedy the problems that

15.

initially caused the children to be removed from the home was against the manifest weight of the evidence. Consequently, appellate counsel's first potential assignment of error and appellant's second assignment of error are not well-taken.

{¶ 34} In addition to the juvenile court's findings under R.C. 2151.414(E)(1), the court also found that appellant committed abuse or allowed the children to suffer neglect under R.C. 2151.414(E)(15). We find the evidence presented above to be supportive of the juvenile court's findings under R.C. 2151.414(E)(15). In particular, we conclude that appellant's neglect is demonstrated via her refusal to take the children's reports of sexual abuse seriously, and subsequent failure to remove the children from the environment in which they were being abused. In addition, evidence was presented at the hearing relating to physical abuse suffered by the children. Specifically, an incident occurred in October 2009 in which one of the children, who was unsupervised at the time, was burned with a hair dryer that was being used to keep the child warm. Appellant was subsequently convicted of child endangering as a result of this incident. Appellant also acknowledged at the hearing that appellant utilized discipline tactics involving forcing the children to stand in a corner until their feet hurt, and threatened to have the children "whooped" with a belt by their father if they moved from the corner before she told them to do so. Based on this evidence, we cannot say that the juvenile court's findings under R.C. 2151.414(E)(15) were against the manifest weight of the evidence. Accordingly, appellate counsel's second and third potential assignments of error are not well-taken.

16.

## C. Best Interests of the Children Under R.C. 2151.414(D)(1)

{¶ 35} In her third assignment of error, appellant argues that the trial court erred in finding that a grant of permanent custody to LCCS was in the children's best interests under R.C. 2151.414(D)(1).

{¶ 36} R.C.2151.414(D)(1) provides:

(D)(1) In determining the best interest of a child * * *, the court shall consider all relevant factors, including, but not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section

17.

2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

For the purposes of division (D)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home.

{¶ 37} Here, with regard to its consideration of the children's best interests, the juvenile court stated: "The court has considered all of the best interest factors contained in R.C. 2151.414(D)(1) and the Court further finds that it is in the best interest of [the children] that permanent custody be awarded to LCCS." Nonetheless, appellant argues that the court "offered no clear analysis of each of the factors and for each of the children."

{¶ 38} Regarding the mandate set forth in R.C. 2151.414(D)(1), we note that the trial court is required to *consider* the factors set forth therein. Thus, the statute does not require the juvenile court to provide a "clear analysis" of each of the factors so long as

18.

the record clearly demonstrates that they were considered in arriving at the best interest determination. Moreover, we find that the juvenile court in this case did, in fact, detail its reasoning for finding that permanent custody was in the children's best interests.

{¶ 39} Under R.C. 2151.414(D)(1)(a), the court found that the children were "very bonded" to one another, and further found that the children were doing well in their foster placements. This finding was supported by testimony elicited from Dacres and Mangus. As to R.C. 2151.414(D)(1)(c), the court noted that the children had been removed from the home for 14 months as of the date of the hearing. As for the children's wishes under R.C. 2151.414(D)(1)(b), Dacres testified that only one of the children consistently expressed a desire to be reunified with appellant. Pursuant to R.C. 2151.414(D)(1)(d), the court specifically found that the children were "in need of a legally secure permanent placement and that an award of permanent custody will facilitate an adoptive placement." As to the wishes of the children, as expressed through the guardian ad litem, the court underscored Fuller's recommendation of permanent custody to LCCS based on appellant's failure to protect the children. Further, Dacres testified at the hearing that only one of the children consistently expressed a desire to be reunited with appellant.

{¶ 40} Having thoroughly reviewed the record before us, we cannot agree with appellant that the juvenile court failed to consider the factors involved in determining the children's best interests under R.C. 2151.414(D)(1). Rather, we conclude that the juvenile court's determination that permanent custody was in the children's best interests

19.

was supported by clear and convincing evidence, and was not against the manifest weight of the evidence.

{¶ 41} Accordingly, appellant's third assignment of error is not well-taken.

### III.  Conclusion

{¶ 42} This court, as required under *Anders*, has undertaken our own examination of the record to determine whether any issue of arguable merit is presented for appeal. We have found none.  Accordingly, we grant counsel's motion to withdraw.

{¶ 43} The judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed.  Costs are hereby assessed to appellant in accordance with App.R. 24.  The clerk is ordered to serve all parties with notice of this decision.

Judgment affirmed.


A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.  *See also* 6th Dist.Loc.App.R. 4.


Thomas J. Osowik, J.

Stephen A. Yarbrough, P.J.

James D. Jensen, J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.