[Cite as *In re A.Y.*, 2025-Ohio-4316.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

|  |  |  |  |
|---|---|---|---|
| IN RE: | : | | |
| A.Y. | : | CASE NO. CA2025-04-028 | |
| | : | OPINION AND JUDGMENT ENTRY 9/15/2025 | |
| | : | | |
| | : | | |

APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 2024 JC 05701

Mark J. Tekulve, Clermont County Prosecuting Attorney, and Nicholas A. Horton, Assistant Prosecuting Attorney, for appellee.

Susannah M. Meyer, for appellant.

Vivian L. Martin, guardian ad litem.

## **O P I N I O N**

**SIEBERT, J.**

{¶ 1} Appellant, "Father," appeals the decision of the Clermont County Court of Common Pleas, Juvenile Division, granting permanent custody of Jane to the Clermont

County Department of Jobs and Family Services ("the Agency"). Jane is the last of four siblings alongside Gus, John, and Tyler.[1] Gus and John are not Father's biological children, but Tyler and Jane are. In parallel proceedings, we (1) dismissed Father's appeal and affirmed the juvenile court's granting of permanent custody of Tyler to the Agency, and (2) overruled the assignments of error brought forth by the mother of all four children ("Mother") and affirmed the juvenile court's granting of permanent custody of all four to the Agency.

{¶ 2} Father asserts four assignments of error in this appeal: (1) the juvenile court had no jurisdiction over Father, (2) the trial court did not support its finding of "reasonable efforts" by the Agency to reunite Jane and Father before granting custody of Jane to the Agency, (3) Father did not receive effective assistance of counsel, and (4) the juvenile court impermissibly relied on evidence prior to Jane's birth when granting permanent custody to the Agency.

{¶ 3} We overrule them all. Father voluntarily appeared before the court and waived any issue of personal jurisdiction. Moreover, when read in its entirety, the juvenile court sufficiently described the reasonable efforts made by the Agency to prevent Jane's removal from her parents' custody. Father's counsel's stipulation to testimony and evidence from the custody cases of Jane's siblings was a matter of trial strategy and not ineffective assistance of counsel. Finally, granting permanent custody to the Agency was not against the manifest weight of the evidence because the Agency case worker and guardian ad litem testified on matters within their personal knowledge as to the circumstances of Jane's case.

**Procedural Background**

---

1. "Gus," "John," "Tyler," and "Jane" are a pseudonyms adopted for this opinion for the purposes of privacy and readability. *In re D.P.* 2022-Ohio-4553, ¶ 1, fn. 1 (12th Dist.).

{¶ 4} The Agency came into contact with Mother and the children in October 2021 after reports of domestic violence by Father against Mother. There were also reports of drug use. The Agency filed a complaint in December 2021 and alleged Gus, John, and Tyler were neglected children. The court adjudicated them as neglected and granted temporary custody to the Agency in early 2022.

{¶ 5} During the subsequent proceedings, Mother became pregnant again by Father and gave birth to Jane in January of 2024 with Father present. All of this occurred despite the existence of protection orders that prohibited Father and Mother from being in contact with one another. After Jane's birth, the Agency filed a complaint alleging Jane was a dependent child and seeking dispositional orders including permanent custody. The Agency also sought pre-dispositional custody of Jane. The juvenile court granted custody of Jane to the Agency the same day via an ex parte order. Before the hearing, the Agency attempted to contact Father by phone and text, but Father did not answer or attend the hearing.

{¶ 6} The magistrate held an adjudication hearing for Jane in February of 2024. There is no transcript for this hearing, but the subsequent entry indicated Father attended this hearing with counsel. The magistrate found Jane to be a dependent child. The order noted Father and Mother's history of domestic violence, their case plans made as a result Janes' siblings' preexisting custody cases, and Father's repeated violations of protection orders prohibiting him from having contact with Mother. The magistrate concluded there were "continued concerns of domestic violence" and that Mother's continued contact with Father "put her children at risk of harm."

{¶ 7} The order further noted (bold text and underscore in original):

> The Court further finds that the Agency made reasonable efforts to prevent the removal of [Jane] from the home, to eliminate the continued removal and placement of the child,

- 3 -

or to make [i]t possible for the child to return home safely as follows:

**Caseworker has added child and visitation to parents' current case plan.**

**Caseworker sent a referral to Central Clinic to schedule visitation with putative father[.]**

**Caseworker has spoken with parents about potential relative or kinship placement and sent kinship letters to that individual[.]**

**Caseworker has provided clothing voucher for child to foster parents[.]**

**Caseworker has sent a referral to Help Me Grow[.]**

**Caseworker has been working with parents for two years and has sent all required referrals for services.**

**Caseworker has spoken with putative father regarding establishing paternity.**

Neither Mother nor Father filed objections to the adjudication decision. Later that month, the juvenile court adopted the magistrate's decision.

{¶ 8} The magistrate held Jane's dispositional hearing in April of 2024. Father did not attend the hearing because he was incarcerated at the Brown County Jail for violating one of Mother's civil protection orders. However, Father's counsel attended the hearing. The magistrate's decision noted that "[i]n the interest of efficiency, the parties, through counsel, and the [guardian ad litem], stipulated that the Magistrate could consider the testimony and evidence from the . . . permanent custody trial [of Tyler] in deciding" Jane's case. This stipulation was "subject to the limitation that . . . any termination of parental rights in [Jane's] case was not to be based on any termination of parental rights in the siblings' cases."

{¶ 9} However, Father testified via video conference at an additional hearing in June of 2024. His testimony focused on various programs he participated in and

completed during the proceedings below, including drug abuse and parenting courses. Father acknowledged the various legal proceedings stemming from his abuse and violation of protection orders but asserted that he desired "to move forward from the past mistakes that [he] made . . . [and] move on with [his] life." At the time of that hearing, Father was still living in transitional housing and had no source of income.

{¶ 10} The magistrate granted the Agency permanent custody, finding that despite their history of abuse, Mother and Father still frequently associated in violation of protection orders, sometimes to violent effect. These actions, the magistrate noted, landed Father in jail at the time of the dispositional hearing and rendered him unable to provide Jane with secure housing. As a result, the magistrate concluded that neither parent could meaningfully remedy the condition that led to Jane's removal in the first place—Father's abuse. The order further stated:

> The Agency exercised reasonable efforts to prevent the removal and continued removal of the children from the home. Case plans were prepared and reviewed with the parents. The Agency monitored the progress of the plans. The agency set up visitation. Referrals for parenting and counseling were made. The agency provided case management and drug tested Mother and Father periodically.

{¶ 11} Both Mother and Father filed objections to the magistrate's decision. Among other objections raised, Father asserted the magistrate's order was against the manifest weight of the evidence because he "substantially complied with his Case Plan services." The juvenile court held a hearing in October of 2024. Father attended via video conference, and Father's counsel attended personally. The juvenile court adopted the decision of the magistrate. The court concluded that Mother and Father "are committed to a lifestyle that is not conductive to providing an adequate home for [Jane]. The parents may try to downplay the serious nature of past violence and relapses, but the law does not require the Court to gamble with [Jane's] welfare."

{¶ 12} Father now appeals.

**Second Assignment of Error: Jurisdiction over Father**

{¶ 13} We address Father's second assignment of error first. Father questions the juvenile court's personal jurisdiction over him and argues the court violated his federal and state constitutional rights by not providing him with adequate notice and an opportunity to be heard at Jane's temporary or permanent custody hearing. We disagree.

*Applicable Law*

{¶ 14} It is axiomatic that a court must have personal jurisdiction over a parent to render a judgment that affects that parent's custodial rights. *In re K.M.*, 2019-Ohio-1833, ¶ 31 (12th Dist.). Personal jurisdiction can be established "'either by service of process upon [a litigant] or the voluntary appearance and submission of the [litigant] to the jurisdiction of the court.'" *Id.*, quoting *Snyder Computer Sys., Inc. v. Stives*, 2008-Ohio-1192, ¶ 14 (7th Dist.). Importantly, "'[a]n objection to personal jurisdiction is waived by a party's failure to assert a challenge to such jurisdiction at its first appearance in the case.'" *Id.*, quoting *In re A.L.W.*, 2012-Ohio-1458, ¶ 37 (11th Dist.).

*Analysis*

{¶ 15} The record demonstrates Father received no notice of the emergency custody hearing outside of unanswered phone calls and texts made by the Agency. However, juvenile courts may "issue any temporary orders necessary to protect the best interest of a child subject to a pending abuse, neglect, or dependency complaint." *In re K.A.G.*, 2013-Ohio-780, ¶ 19 (12th Dist.), R.C. 2151.33. This can be done ex parte without notice to a party. R.C. 5131.33(D).

{¶ 16} Regardless of whether Father received proper notice of the emergency custody hearing, Father appeared at the adjudicatory hearing in February of 2024, the June of 2024 hearing, and at the hearing on objections to the magistrate's decision in

October of 2024. Father's attorney also appeared at Jane's personal custody hearing in April of 2024. By making appearances without ever challenging the juvenile court's jurisdiction over him, we conclude Father waived this issue and the trial court properly exercised jurisdiction over him.

{¶ 17} This assignment of error is overruled.

**First Assignment of Error: "Failure to Comply with R.C. 2151.419(B)(1)"**

{¶ 18} Father next argues the magistrate's adjudicatory order and order granting permanent custody failed to support the determination the Agency made reasonable efforts to prevent Jane's removal. He asserts this lack of support stems from the magistrate's failure to adequately describe the relevant services provided by the Agency to Father and why those services did not prevent Jane's removal from the home. R.C. 2151.419(B)(1). We again disagree with Father's argument.

*Applicable Law*

{¶ 19} Before a juvenile court can order temporary custody of a child be granted to the Agency or before permanent custody can be granted in an original disposition, Ohio statutes require the juvenile court to "determine whether the public children services agency . . . made reasonable efforts to prevent the removal of the child from the child's home." R.C. 2151.419(A)(1), 2151.33, and 2151.353. In doing so, the court must "briefly describe in the findings of fact the relevant services provided by the agency to the family of the child and why those services did not prevent the removal of the child from the child's home." R.C. 2151.419(B)(1). The courts do not have to use any magic words or formula to satisfy this requirement, and Ohio appellate courts can "read [the order] in its entirety" to determine if the statute was followed. *In re Wright*, 2002 WL 148504, *3 (4th Dist. Jan. 31, 2002); *see also In re T.B.,* 2014-Ohio-5589, ¶ 21-22 (6th Dist.), *In re Z.R.*, 2016-Ohio-1331, ¶ 20 (9th Dist.).

- 7 -

*Analysis*

{¶ 20} We conclude the magistrate's adjudication order and order granting permanent custody satisfied the statutory duty to describe the relevant services provided by the Agency to Father and why those services did not prevent Jane's removal. R.C. 2151.419(B)(1). In doing so, we first note that Father did not object to the magistrate's adjudication order (a matter which will be discussed further in Father's third assignment of error).

{¶ 21} In addition, the adjudication order listed various efforts the Agency made to prevent Jane's removal, including adding her to existent case plans, scheduling visits with Father, and continuing to work with Mother and Father as it had for the previous two years. Despite the Agency's listed efforts, the magistrate clearly specified the existence of "danger" to Jane and "underlying family problems" formed "the basis of the adjudication." The adjudication order also detailed Father's history of domestic violence against Mother and the concern that such violence would continue because Mother and Father remained in regular contact despite the existence of civil protection orders prohibiting this. The magistrate did not specifically tie domestic violence concerns to why the Agency's listed services did not prevent Jane's removal, but when read in its entirety, no other reasonable conclusion can be drawn. Therefore, the magistrate's adjudication order satisfies the statutory requirement under R.C. 2151.419(B)(1).

{¶ 22} Likewise, the magistrate's order granting the Agency permanent custody of Jane satisfied the same requirement. This order noted the Agency filed a case plan for Father in Jane's case that was "virtually identical" to the case plan filed in the case involving Jane's siblings. This plan included mental health and drug treatment. The Agency monitored Father's progress on his case plan, set up visitations, made various referrals for services, and periodically drug-tested Father. Despite these efforts, this order

described "Father's pattern of domestic violence against Mother," Father's willingness to defy protection orders, and noted Father tested positive for methamphetamine on February 12, 2024. Again, when read in its totality, the magistrate's order granting permanent custody sufficiently demonstrated Father's own behavior is why the Agency's reasonable efforts to prevent Jane's removal were unsuccessful.

{¶ 23} Neither order follows a formulaic recitation of "Agency provided A, B, and C to prevent removal, but because of X, Y, and Z, the Agency's efforts were unsuccessful." But the law requires no such recitation. The magistrate's orders are more than sufficient to identify and explain what the Agency did to prevent Jane's removal and what Father did (violence against mom, ignoring protection orders) and did not do (stay off drugs) that thwarted the Agency's efforts.

{¶ 24} We overrule this assignment of error.

**Third Assignment of Error: Ineffective Assistance of Counsel**

{¶ 25} Father next asserts his trial counsel was ineffective at several critical junctures of Jane's short permanency proceedings. Father asserts that this ineffectiveness contributed to the juvenile court's impermissible consideration of evidence and testimony presented on matters that occurred prior to Jane's birth.

*Standard of Review:*

{¶ 26} "[P]arental rights involve a fundamental liberty interest, procedural due process, which includes the right to effective assistance of counsel." *In re M.G.*, 2023-Ohio-1316, ¶ 53 (12th Dist.), citing *In re C.D.*, 2009-Ohio-6922, ¶ 22 (12th Dist.). As a result, "[a] parent is entitled to the effective assistance of counsel in cases involving the involuntary termination of his or her parental rights." *In re L.J.*, 2015-Ohio-1567, ¶ 33 (12th Dist.).

- 9 -

{¶ 27} The efficacy of counsel is judged by the same standard in criminal and custody proceedings. *See M.G.* at ¶ 53. The conduct of counsel is presumed to be effective, but ineffective assistance of counsel can be established if a defendant shows (1) that counsel's performance was deficient, and (2) that counsel's deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984). Courts determine deficient performance by asking whether counsel's conduct "fell below an objective standard of reasonableness" based on "the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 688, 690. In turn, prejudice is shown where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A defendant's failure to sufficiently show either *Strickland* prong is fatal to a claim of ineffective assistance. *State v. Lloyd*, 2022-Ohio-4259, ¶ 31, citing *Strickland* at 697.

*Analysis*

{¶ 28} The crux of this assignment of error is Father's trial counsel prejudiced him by not objecting to the magistrate's findings of reasonable efforts by the Agency and stipulating to the facts and circumstances of the siblings' cases. Stated differently, Father contends his trial counsel was ineffective by allowing the magistrate to consider matters that occurred prior to Jane's birth.

{¶ 29} Generally speaking, we conclude such an argument is without merit. The juvenile court has a duty to consider all relevant factors in its permanent custody determination. R.C. 2151.414(E)(16). While the magistrate agreed that the termination of Mother and Father's parental rights in Tyler's case would not be a factor in the termination of their custody of Jane, Father's history of domestic violence and flouting of protection orders (including when he attended Jane's birth) remained extremely relevant. The clock did not "reset to zero" when Jane was born. We conclude the magistrate and juvenile

court properly considered actions taken by the parties both before and after Jane was born.

{¶ 30} More specifically, Father contends the Agency had no intention of working with him regarding Jane, and his counsel's failure to object to the magistrate's reasonable efforts finding relieved the Agency of its duty to show Jane could not be reunited with Father within a reasonable time. We conclude, however, that objecting to the magistrate's finding of reasonable efforts by the Agency after the adjudication hearing would have been futile. Attorneys are not ineffective when they do not raise futile objections. *State v. Gray*, 2023-Ohio-338, ¶ 52 (12th Dist.). As discussed above, the magistrate's order outlined the efforts by the Agency to prevent Jane's removal from Mother and Father's custody and why such efforts, despite years of similar efforts for Jane's siblings, were unsuccessful. Further, the Agency did in fact file a case plan regarding Jane, but Father was in jail or treatment for much of the time between Jane's birth and the disposition order. We thus conclude it was reasonable for the magistrate to consider the lack of success of the Agency's prior efforts with Father.

{¶ 31} Father also argues his trial counsel was ineffective by stipulating to the court's consideration of testimony and evidence from the permanent custody trial of Jane's siblings. Father asserts "the facts and circumstances of Father's situation at the conclusion of [Jane's] case was [sic] starkly different than it was [sic] in the preceding 3 years during [Tyler's] case." Father contends that by stipulating to evidence and testimony, Father's counsel "pollut[ed]" the facts of Jane's case because "domestic violence was never an issue with Father at the time of [Jane's] birth or after."

{¶ 32} "[I]t is well established that decisions regarding what stipulations should be made and what objections should be made primarily involve trial strategy and tactics . . . Even debatable trial strategies and tactics do not constitute ineffective assistance of

counsel." *State v. Brown*, 2025-Ohio-500, ¶ 45 (12th Dist.). There could be many reasons Father's counsel stipulated to the evidence and testimony presented in Tyler's permanent custody case. For example, the magistrate's decision granting permanent custody to the Agency specifically noted counsel for the parties agreed to the stipulation "[i]n the interest of efficiency." Moreover, Father's counsel could have stipulated to the evidence and testimony to "portray an air of candor" to the trier of fact, and "bypass[] . . . pointless, irrelevant [or] prejudicial testimony." *State v. Craig*, 2021-Ohio-2790, ¶ 127-28 (6th Dist.), citing *State v. Davis*, 2008-Ohio-2, ¶ 345-46.[2]

{¶ 33} We note that none of Father's arguments on appeal challenge his troubling history of abuse and violation of court orders. Indeed, his own testimony at the June of 2024 hearing focused not on contesting the details of his history of domestic violence, but on his attempts to retain custody of his children and "move on with [his] life." Even on appeal, Father's arguments are exclusively procedural in nature. Ultimately, Father's own actions, not those of his counsel, polluted his ability to retain custody of Jane.[3]

{¶ 34} We overrule this assignment of error as well.

**Fourth Assignment of Error: Manifest Weight of the Evidence**

{¶ 35} Finally, Father argues the magistrate's decision granting permanent custody of Jane to the Agency was largely based on inadmissible hearsay, including allegations that Father attended Jane's birth in violation of a protection order and that Father strangled Mother, broke her foot, and broke her finger over the course of multiple

---

2. The purported hearsay issues regarding this stipulation will be discussed in Father's final assignment of error.

3. All of this being said, we have previously acknowledged that "permanent termination of parental rights has been described as the family law equivalent of the death penalty in a criminal case." *In re S.F.T.*, 2010-Ohio-3706, ¶ 10 (12th Dist.). That being the case, parties to permanent custody cases, including the Agency, should always strive to create a detailed and thorough record that protects the rights of those involved.

instances of violence. Father argues, "this information was considered in spite of the fact that neither [the Agency case worker] nor the [guardian ad litem] were unable [sic] to provide any documentary evidence or personal knowledge to support their statements . . . [or] testify about the specific events mentioned above by independent knowledge." Father asserts that if such "hearsay" were excluded, the magistrate's order must be considered against the manifest weight of the evidence.

*Applicable Law and Standard of Review:*

{¶ 36} In original disposition proceedings where the Agency immediately requests it be granted permanent custody, "the juvenile court must: (1) determine that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent . . . and (2) determine that permanent custody is in the best interest of the child." *In re S.H.*, 2020-Ohio-3499, ¶ 18 (12th Dist.).[4]

{¶ 37} An appellate court's review of a juvenile court's decision granting permanent custody is generally limited to considering whether sufficient, credible evidence exists to support the juvenile court's determination. *In re A.S.*, 2019-Ohio-4127, ¶ 19 (12th Dist.). However, "[e]ven if there is sufficient evidence to support the juvenile court's decision, an appellate court may nevertheless reverse a permanent custody judgment if it finds the judgment to be against the manifest weight of the evidence." *In re G.A.*, 2023-Ohio-643, ¶ 18 (12th Dist.), citing *In re F.S.*, 2021-Ohio-345, ¶ 61 (12th Dist.).

{¶ 38} In determining whether a juvenile court's judgment is against the manifest weight of the evidence, an appellate court "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving

---

4. There are various factors the court considers in making each of these determinations. *See generally* R.C. 2151.414(D), (E). However, we need not enumerate or analyze them here because (1) Father's argument does not take issue with the juvenile court's weighing of any specific factor, and (2) we disagree with Father's more general argument the trial court based its analysis of the relevant factors on hearsay evidence.

conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered.'" *In re S.M.*, 2019-Ohio-198, ¶ 16 (12th Dist.), quoting *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20. "The presumption in weighing the evidence favors the finder of fact, which we are especially mindful of in custody cases." *In re R.K.*, 2021-Ohio-3074, ¶ 15 (12th Dist.). Therefore, if the evidence is susceptible to more than one construction, the reviewing court is bound to give it the interpretation that is consistent with the verdict and judgment. *In re D.S.*, 2022-Ohio-998, ¶ 63 (12th Dist.).

*Analysis:*

{¶ 39} Even assuming the trial court relied on inadmissible hearsay, such error did not prejudice Father. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted in the statement." Evid.R. 801(C). In permanent custody cases, it is the job of an Agency case worker and a guardian ad litem to investigate the circumstances of the children involved, determine potential remedies, and to protect the well-being and interests of the children. *See Sypherd v. Sypherd*, 2012-Ohio-2615, ¶ 14 (9th Dist.), *In re Thompson*, 2003-Ohio-580, ¶ 38-43 (10th Dist.). However, their testimony may not be relied upon by the juvenile court to establish fact. *Id.* As a result, "it is critical that the trial court distinguish between what may be viewed as an established fact as opposed to information which is merely a narrative explanation that provides a foundation" for the opinions the witness espouses. *Id.*

{¶ 40} Father is correct that both witnesses could have been asked to substantiate their testimony on the details of Father and Mother's domestic violence, but as discussed above, the choice to not do so may have been trial strategy. By all appearances, Father's arguments at trial and in his objections to the magistrate's decision were focused on his

ongoing efforts to better himself and provide a stable environment for Jane (despite having no income or suitable housing) versus contesting specific details of his domestic abuse and violations of protection orders. We see no prejudice to Father as a result of this purported hearsay (or in the decision of Father's counsel to not object to it). We conclude the magistrate and juvenile court's determinations that Jane could not be placed with Father within a reasonable time and that it would not be in Jane's best interest to do so were not against the manifest weight of the evidence.

{¶ 41} We overrule Father's final assignment of error.

{¶ 42} Judgment affirmed.

PIPER, P.J., and M. POWELL, J., concur.

## J U D G M E N T   E N T R Y

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Clermont County Court of Common Pleas, Juvenile Division, for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

/s/ Robin N. Piper, Presiding Judge

/s/ Mike Powell, Judge

/s/ Melena S. Siebert, Judge